United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HERIBERTO ARREOLA, an individual, on behalf of himself, and all others similarly situated,<br><br>     Plaintiff,<br>  v.<br><br>THE FINISH LINE,<br><br>     Defendant. | Case No.: 14-CV-03339-LHK<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO TRANSFER |

Plaintiff Heriberto Arreola ("Arreola") brings this action alleging wage and hour violations under various provisions of the California Labor Code and Business and Professions Code against defendant The Finish Line ("Finish Line"). Before the Court is Arreola's motion to remand pursuant to 28 U.S.C. 1447(c) ("Mot. Remand") and Finish Line's motion to transfer venue to the Central District of California ("Mot. Transfer"). The Court, having considered the record in this case, applicable law, and the parties' briefs, DENIES Arreola's Motion to Remand and GRANTS Finish Line's Motion to Transfer.

## I. BACKGROUND

### A. Factual Background

Finish Line is a retailer of athletic shoes, apparel, and accessories, with its headquarters in Indiana. ECF No. 1, ¶¶ 12-14; ECF No. 23-2, at 8. As of April 2014, Finish Line operated 644 stores in 46 states, including in California. *Id.*

1

Arreola is a former hourly employee of Finish Line's store in Montebello, California, which is located in the Central District of California. Declaration of Mark Clark in Support of Motion to Transfer, ECF No. 20-1, ¶ 2. During Arreola's employment at Finish Line, Arreola also resided in the Central District of California. *Id*. At Finish Line, Arreola held the job title of "Sales Lead." *Id.*

**B.     Procedural History**

On May 14, 2014, Arreola filed a complaint in Santa Clara Superior Court, alleging that Finish Line and fifty unnamed Does violated California Labor Code §§ 201, 202, 203, 226(a), 510, 558, 1194, and 1199, Wage Order 7-2001, and Business & Professions Code §§ 17200-17208. First Am. Compl. ¶¶ 5-6. The gravamen of Arreola's allegation is that Finish Line failed to pay regular and overtime wages; failed to compensate its hourly employees for certain tasks (such as attending weekly management conference calls, undergoing a security check, and turning on their computers); and failed to maintain adequate time records and itemized wage statements. *Id*. ¶¶ 2-4. Arreola seeks unpaid wages and/or overtime, penalties, injunctive relief, and attorney's fees and costs for his claims brought under the California Labor Code, as well as injunctive relief, restitution, and disgorgement for Arreola's claims brought under the California Business and Professions Code. *Id.* ¶¶ 6-7. However, Arreola does not specify an amount of damages. *See id*. at 15-16. Pursuant to California Code of Civil Procedure § 382, Arreola seeks to represent two classes. First, Arreola seeks to represent a class of all current and former Finish Line employees in California who were employed as "Hourly Employees since four (4) years prior to the filing of this action to the present." *Id.* ¶ 28. Second, Arreola seeks to represent a sub-class of all current and former Finish Line employees who were employed in California "as a 'Sales Lead' since four (4) years prior to the filing of this action to the present." *Id*.

On July 23, 2014, Finish Line removed Arreola's complaint to this Court based on several claims of federal jurisdiction. ECF No. 1. On August 8, 2014, Arreola filed a motion to remand this action back to state court, ECF No. 19, with one supporting declaration and exhibit, ECF Nos. 19-1 & 19-2. Finish Line filed an opposition to the motion on August 22, 2014, ECF No. 21 ("Opp'n Mot. Remand"), with one supporting declaration, ECF No. 21-1. Arreola filed a reply on August 29, 2014, ECF No. 22 ("Reply Mot. Remand."), with one supporting declaration, ECF No. 22-1.

United States District Court
For the Northern District of California

On August 15, 2014, Finish Line filed a motion to transfer venue to the Central District of California, ECF No. 20 ("Mot. Transfer"), with two supporting declarations, ECF Nos. 20-1 & 20-2. Arreola filed an opposition to the motion to transfer on August 29, 2014, ECF No. 23 ("Opp'n Mot. Transfer"), with a supporting declaration and four exhibits, ECF Nos. 23-1, 23-2, 23-3 & 23-4. Finish Line filed a reply on September 5, 2014. ECF No. 24 ("Reply Mot. Transfer").

## II.     LEGAL STANDARD

### A.     Motion to Remand

The removal statute, 28 U.S.C. § 1441, provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. The Class Action Fairness Act ("CAFA") vests the federal courts with original jurisdiction over class actions that meet the following prerequisites: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; (2) the parties meet minimal requirements for diversity, including that "any member of a class of plaintiffs is a citizen of a State different from any defendant"; and (3) the class equals to or exceeds 100 individuals in the aggregate. 28 U.S.C. § 1332(d). District courts also have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Furthermore, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If, at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. *See* 28 U.S.C. § 1447(c).

A plaintiff may bring a motion to remand to challenge removal of an action to federal court for lack of subject matter jurisdiction or for a defect in the removal procedure. 28 U.S.C. § 1447(c). Upon a motion to remand to state court, the party asserting federal jurisdiction has the burden of proof. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v.*

3

United States District Court
For the Northern District of California

1    *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). As a result, "[t]he defendant always bears the

2    burden of establishing that removal is proper." *Id.* (internal quotation omitted).

3    **B.      Motion to Transfer**

4            28 U.S.C. § 1404(a) authorizes the transfer of a case to another district in certain

5    circumstances. 28 U.S.C. § 1404(a). For a court to transfer venue pursuant to § 1404(a), the

6    moving party bears the burden of showing that: (1) the transferee court is one in which the original

7    action could have been brought, and (2) the convenience of the parties and witnesses in the interest

8    of justice favor transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal

9    quotation marks omitted). The decision to transfer pursuant to § 1404(a) is within the court's

10   discretion. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

11   **III.    DISCUSSION**

12   **A.      Motion to Remand**

13           Finish Line asserts that it properly removed Arreola's lawsuit to federal court for three

14   reasons. First, Finish Line alleges that Arreola's complaint meets the requirements of CAFA

15   because Arreola seeks to represent a class of over 100 individuals, the parties are minimally

16   diverse, and Arreola's claims put at least $5 million in controversy. ECF No. 1 ¶¶ 23-24. Second,

17   Finish Line contends that a labor class action lawsuit regarding wages, hours, or working

18   conditions—such as Arreola's—is preempted by the National Labor Relations Act. *Id.* ¶¶ 17-22.

19   Finally, Finish Line argues this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)

20   because Arreola and Finish Line are citizens of different states, and Arreola's individual claim puts

21   at least $75,000 at issue. *Id.* ¶¶ 41-52. The Court will address Finish Line's CAFA argument first,

22   then Finish Line's preemption argument. As discussed below, because the Court finds that it has

23   jurisdiction pursuant to CAFA, the Court need not address Finish Line's argument based on

24   diversity jurisdiction.

25                      **1.      Federal Question Jurisdiction Pursuant to CAFA**

26                              **a)      Burden on the Parties**

27           When a defendant removes an action to federal court pursuant to CAFA, the burden of

28   establishing removal jurisdiction is on the removing party. *Abrego Abrego v. The Dow Chem. Co.*,

United States District Court
For the Northern District of California

4

1    443 F.3d 676, 685 (9th Cir. 2006). Where, as here, the amount in controversy is contested, and the

2    plaintiff does not plead a specific amount in controversy, the proponent of federal jurisdiction must

3    establish it by a preponderance of the evidence. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d

4    975, 981 (9th Cir. 2013). Under the preponderance of the evidence standard, the removing party

5    must "provide evidence establishing that it is more likely than not that the amount in controversy

6    exceeds [the jurisdictional amount]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th

7    Cir. 1996) (internal quotation omitted). In determining whether the removing party has satisfied

8    this burden, the district court may consider facts in the removal petition and "'summary-judgment-

9    type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm

10   Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R&H Oil & Gas Co.*, 63

11   F.3d 1326, 1335-36 (5th Cir. 1995)). Mere conclusory allegations are insufficient, *id.*, as are

12   "speculative and self-serving assumptions," *Garibay v. Archstone Communities LLC*, 539 F. App'x

13   763, 764 (9th Cir. 2013). The court must assume that the allegations of the complaint are true, and

14   that a jury will return a verdict for the plaintiff on all claims made. *Kenneth Rothschild Trust v.

15   Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is

16   what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually*

17   owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing

18   *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)) (emphasis in original).

19           Here, Arreola does not dispute that the parties are minimally diverse, or that the instant

20   action involves a class of at least 100 persons. *See* Mot. Remand at 10. The only disagreement is

21   whether the amount put in controversy by Arreola's complaint exceeds $5 million. The Court finds

22   that Finish Line has shown by a preponderance of the evidence that Arreola's wage and overtime

23   claim puts at least $5 million in controversy. Therefore, the Court need not address Finish Line's

24   alternative arguments as to whether Arreola's other claims satisfy CAFA's amount-in-controversy

25   requirement.

                      **b)       Adequacy of Finish Line's Calculation as to Arreola's Wage and
26                                Overtime Claim**

27           Finish Line calculates that Arreola's wage and overtime claim puts approximately $5.3

28

5

**United States District Court**
For the Northern District of California

1   million in controversy. ECF No. 1, at 9. In his complaint, Arreola alleges that Finish Line forced

2   putative class members to "work on a regular and consistent basis without receiving compensation

3   for all hours worked at their regular rate or . . . at the applicable overtime rate," in violation of

4   California Labor Code §§ 510, 512, 1194, and 1199. First Am. Compl. ¶¶ 38-39. Under California

5   law, an employee who works more than eight hours in a day, or 40 hours in a week, must be paid at

6   least one and one half times his or her base rate of pay. Cal. Labor Code § 510(a). Based on

7   information gleaned from its payroll records, Finish Line states that the average base rate of pay for

8   all putative class members was $12.72 per hour. ECF No. 1, ¶ 25. Therefore, Finish Line calculates

9   that the overtime rate of pay for putative class members would be $19.08 (average base rate of pay

10  of $12.72 per hour times 1.5). *See id.* ¶ 32. Finish Line also represents that during the class period

11  (four years prior to the filing of the complaint to the present) Finish Line employed on average

12  1,287 putative class members at a time in its California locations. *Id.* ¶ 25. Finish Line, pointing to

13  Arreola's allegation that Finish Line did not pay putative class members "on a regular and

14  consistent basis," then assumes that each putative class member worked at least one hour of

15  overtime per week, every week, from the time the statute of limitations period on Arreola's claim

16  began to toll to the date of the filing of the complaint. *Id.* ¶ 32. This equates to 218 weeks. *Id.*

17  Multiplying 218 weeks by the overtime rate of pay ($19.08) by the average number of putative

18  class members Finish Line employed at any given time in California (1,287) totals approximately

19  $5.3 million.

20        Arreola raises two arguments as to why Finish Line's calculations and assumptions are

21  incorrect. First, Arreola contends that the language in his complaint and extrinsic evidence do not

22  support Finish Line's assumptions that all putative class members are entitled to one hour of

23  overtime pay per week during the class period. Mot. Remand at 12-13; Reply Mot. Remand at 2-3.

24  Second, Arreola asserts that Finish Line adduced no evidence to support its assumptions. Mot.

25  Remand at 13.

26        The Court credits the evidence Finish Line offers regarding the average number of class

27  members Finish Line employed at any given time in California, and their average base rate of pay.

28  According to a supplemental declaration from one of Finish Line's attorneys that was filed in

United States District Court
For the Northern District of California

1   conjunction with Finish Line's opposition to the motion to remand, these numbers are from Finish

2   Line's human resources department, as well as Finish Line's relevant time and payroll records.

3   ECF No. 21-1, ¶¶ 2-4. These sources are sufficiently credible. *See Coleman v. Estes Express Lines,*

4   *Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (crediting data presented from research of

5   employee records and the employer's computer databases); *Quintana v. Claire's Stores, Inc*., 2013

6   WL 1736671-LHK, at *6 (N.D. Cal. Apr. 22, 2013) (crediting evidence presented by the

7   defendant's vice president of store operations and a director of payroll services).

8        The Court also credits Finish Line's calculation of its liability under Arreola's wage and

9   overtime claim, as the calculation is adequately supported by Finish Line's underlying data and the

10  allegations in Arreola's complaint. Finish Line makes two assumptions in its calculation: (1) that

11  each putative class member would be entitled to at least one hour of overtime per week; and (2)

12  that each class member would be entitled to overtime each week during the statute of limitations

13  period. *See* ECF No. 1, ¶ 32. District courts in the Ninth Circuit have permitted a defendant

14  removing an action under CAFA to make assumptions when calculating the amount in

15  controversy—such as assuming a 100 percent violation rate, or assuming that each member of the

16  class will have experienced some type of violation—when "those assumptions are reasonable in

17  light of the allegations in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939, 2013 WL

18  2950600 EMC, at *6 (N.D. Cal. June 14, 2013) (collecting and citing cases). Such assumptions are

19  based on the principle that a "plaintiff [is] the master of the claim" and may avoid federal

20  jurisdiction by pleading different facts. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In

21  addition, courts emphasize "a removing defendant is *not* obligated to research, state, and prove the

22  plaintiff's claims for damages." *Coleman*, 730 F. Supp. 2d at 1148 (internal quotation omitted)

23  (emphasis in original). Therefore, the issue here becomes whether Finish Line's assumptions are

24  "reasonable in light of the allegations in [Arreola's] complaint." *Altamirano*, 2013 WL 2950600, at

25  *6.

26        The Court finds that Finish Line's assumptions are reasonable. In his complaint, Arreola

27  pleads that Finish Line forced putative class members to "work on a regular and consistent basis

28  without receiving compensation for all hours worked at their regular rate or . . . at the applicable

7

overtime rate," and that Finish Line had a "policy" of not paying owed overtime. First Am. Compl. ¶ 39, 46. Arreola's complaint defines the putative class as "[a]ll persons who are employed or have been employed by Finish Line, Inc. in the State of California as a Hourly Employee[] since four (4) years prior to the filing of this action to the present." *Id*. ¶ 28. In addition, Arreola pleads that "Plaintiff and all members of the Proposed Class sustained injuries and damages arising out of and caused by" violations of all the statutes cited in Arreola's complaint. *Id*. ¶ 34. Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week. *See Quintana*, 2013 WL 1736671, at *5 (pleading that defendants "systematically" failed to pay overtime supported assumption that each putative class member was entitled to one hour of overtime per week for each week they worked); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (pleading that defendant had a "uniform policy and scheme" of violating employment law and that violations took place "at all material times" justified assumption of one violation per employee per week); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (allegation of "consistent" overtime work justified defendant's assumption that each class member was entitled to one hour of overtime per week).

Arreola argues that Finish Line's assumptions are unsupported by either the record or the language in Arreola's complaint, though Arreola's argument is unclear. First, in Arreola's motion to remand, Arreola argues that one of Arreola's own pay stubs shows that Arreola was not entitled to overtime pay during one pay period. *See* Mot. Remand at 13 (citing ECF No. 19-2). The pay stub reflects that Arreola worked 40 hours in a pay period, and does not reflect any pay owed for overtime work. ECF No. 19-2. Therefore, Arreola argues that because "there are pay periods when the named Plaintiff (Arreola) did not work any overtime," Finish Line's assumptions that all putative class members were entitled to one hour of overtime pay per week during the statute of limitations period is unjustified. Mot. Remand at 13.

The Court finds Arreola's argument regarding his single pay stub to be unpersuasive. First,

Case No.: 14-CV-03339-LHK
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO TRANSFER

**United States District Court**
For the Northern District of California

1    it would be incongruous to expect Finish Line to document its own labor law violations by

2    providing pay stubs that showed, as Arreola alleges, an employee was entitled to overtime pay but

3    not compensated for overtime. *See* First Am. Compl. ¶¶ 39-43. Accordingly, Finish Line's own pay

4    stubs are not, standing alone, evidence of the frequency with which Finish Line violated state labor

5    laws.

6          Second, Arreola's argument contradicts the allegations that Arreola makes in his complaint,

7    and Arreola's claims for class certification. In his complaint, Arreola alleges that Finish Line had a

8    "policy of requiring Plaintiff and the Proposed Class to work without receiving" overtime

9    compensation, and that Finish Line violated overtime pay laws on a "regular and consistent basis."

10   First Am. Compl. ¶¶ 39, 46. Arreola also alleges that "the claims of the Plaintiff [Arreola] are

11   typical of the claims of the Proposed Class." First Am. Compl. ¶ 34. Furthermore, Arreola claims

12   that the issue of overtime pay is a "question[] of law and fact common to the Proposed Class that

13   predominate over any questions affecting only individual Proposed Class Members." *Id*. ¶ 33.

14   Now, by furnishing his pay stub, Arreola appears to be arguing that he was not in fact deprived of

15   owed overtime pay on a "regular and consistent basis." In addition, Arreola also appears to be

16   arguing that the question of how often he was entitled to overtime pay is in fact one that will

17   require individualized, and not classwide, inquiry. Both of these arguments would contradict

18   assertions Arreola makes in his complaint. *See* First Am. Compl. ¶¶ 33-34, 39, 46.

19         Third, there is no indication that Arreola's *single* pay stub is a representative sample with

20   regards to the total span of Arreola's employment, or a representative sample for a putative class of

21   over 1,000 individuals. *See Altamirano*, 2013 WL 2950600, at *9 (two randomly selected time

22   cards did not rebut defendant's assumption regarding frequency of employment law violations

23   where there was "nothing to indicate [the time cards were] . . . representative of . . . the entire

24   putative class during the entire class period."). Therefore, Arreola's single pay stub does not

25   contradict Finish Line's assumptions, especially where those assumptions are "reasonable in light

26   of the allegations in the complaint." *Id*. at *6.

27         Fourth, in his second cause of action Arreola alleges that Finish Line failed to "accurately

28   report total hours worked by Plaintiff and the proposed class" on "each and every" wage statement

9

that Finish Line provided to Arreola and putative class members. *Id.* ¶ 50. Assuming the truth of

Arreola's allegation, *see Kenneth Rothschild Trust*, 199 F. Supp. 2d at 1001, this would mean

Finish Line deliberately misreported the hours and rate of pay on "each and every" pay statement

provided to Arreola, First Am. Compl. ¶ 50. Accordingly, Arreola's pay stub does not disprove

Finish Line's assumptions regarding how often Finish Line failed to pay overtime because Arreola

himself alleges that Finish Line's pay statements were inaccurate.

In his reply, Arreola drops reference to his pay stub, and instead asserts for the first time

that Arreola's claim for overtime pay "stems from Defendant's policy of requiring its employees to

undergo a bag check." Reply Mot. Remand at 3. Arreola further argues that this bag check may

have been done on-the-clock, may have taken only a couple minutes, or may not have been

performed if, for instance, a putative class member did not take a meal break. *Id.* In general,

"arguments raised for the first time in Reply briefs are waived." *In re Yahoo Mail Litig.*, 7 F. Supp.

3d 1016, 1035 (N.D. Cal. Aug. 12, 2014); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990).

Moreover, the Court notes that Arreola does not state whether the time spent undergoing a "bag

check" would be reflected on a pay stub. Furthermore, Arreola's argument is contradicted by the

plain language in Arreola's complaint. In his complaint, Arreola never states that his claim for

unpaid overtime was dependent on whether or not putative class members underwent a bag check.

Rather, the complaint simply states: "Plaintiff and others were forced to work on a regular and

consistent basis without receiving compensation for all hours worked . . . at the applicable overtime

rate." First Am. Compl. ¶ 39; *id.* ¶ 43 (alleging that "[o]n a regular and consistent basis, Plaintiff

and the Proposed Class worked without receiving compensation for all hours worked at the proper

corresponding rate."); *id.* ¶ 46 ("By their policy of requiring Plaintiff and the Proposed Class to

work without receiving compensation for all hours worked at their regular rate, or . . . at the rate of

time and one-half (1/2), Defendant willfully violated the provisions of Labor Code § 1194."").

Moreover, if Arreola is now trying to claim that not all putative class members underwent a bag

check every day, such a claim would run afoul of Arreola's allegation that "Plaintiff and all

'Hourly employees' were required to undergo a 'bag check' *each time* he/she left Defendant's

store." *Id.* ¶ 43 (emphasis added). Furthermore, it would contradict Arreola's argument for class

Case No.: 14-CV-03339-LHK

ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO TRANSFER

1    certification that "all members of the Proposed Class sustained injuries and damages arising out of

2    and caused by Defendant's common course of conduct," including violation of applicable overtime

3    laws. *Id.* ¶ 34.

4           Finally, Arreola also argues that "it is baffling that Defendant engages in speculation and

5    conjecture" regarding Finish Line's unpaid wages and overtime calculation, when Finish Line "can

6    easily review its records to determine the true potential liability." Mot. Remand at 20. However, as

7    stated above, this ignores the basic principle that "a removing defendant is *not* obligated to

8    research, state, and prove the plaintiff's claims for damages." *Coleman*, 730 F. Supp. 2d at 1148

9    (internal quotation omitted) (emphasis in original). Moreover, Finish Line is justified in making

10   reasonable assumptions about its liability based on Arreola's complaint. *See Altamirano*, 2013 WL

11   2950600, at *6.

12          The Court finds that Finish Line has shown by a preponderance of the evidence that

13   Arreola's claim for unpaid wages and overtime puts at least $5 million in controversy, and

14   therefore satisfies CAFA's minimum amount-in-controversy requirement.[1] Accordingly, the Court

15   DENIES Arreola's motion to remand.

16                    **2.       Preemption by the National Labor Relations Act**

17          Although the Court has found federal jurisdiction pursuant to CAFA, the Court briefly

18   addresses Finish Line's argument in the alternative regarding preemption. Finish Line argues that

19   the right to bring a state law employment class action, as Arreola has brought here, "is one that is

20   arguably protected by the National Labor Relations Act." Opp'n Mot. Remand at 11. Thus Finish

21   Line contends that Arreola's state law employment class action is effectively preempted by the

22   National Labor Relations Act ("NLRA") and that the National Labor Relations Board ("NLRB"),

---

[1] Although Arreola's claim for unpaid wages and overtime has put at least $5 million in
controversy, the Court notes for the sake of completeness that Finish Line has calculated the
remainder of Arreola's claims put at least $5 million in controversy in at least three different ways.
First, Finish Line contends that, based on the allegations in Arreola's complaint and Finish Line's
payroll records, Arreola's claim for waiting time penalties pursuant to California Labor Code § 203
put at least $8.8 million in controversy. ECF No. 1, at ¶ 33. Finish Line also calculates that
Arreola's claim for failure to provide itemized wage statements in violation of California Labor
Code § 226 put more than $7 million in controversy. *Id.* ¶ 34. Finally, Finish Line contends that
Arreola's claim for damages pursuant to California Labor Code § 2699 put at least $6 million at
issue. *Id.* ¶ 38. The Court need not address the sufficiency of these calculations, but in the
aggregate they would exceed $21 million in damages.

11

1   the agency charged with interpreting the NLRA, has exclusive jurisdiction. Finish Line requests

2   that this Court take jurisdiction over Arreola's claim "for the purpose of determining whether

3   exclusive federal jurisdiction exists in the NLRB" to decide an employment law class action.  *Id.*

4   (internal quotation omitted).

5          Finish Line cites the following in support of its contention: Section 7 of the NLRA

6   provides, in relevant part, that employees shall have the right to "bargain collectively . . . and to

7   engage in other concerted activities for the purpose of collective bargaining or other mutual aid or

8   protection." 29 U.S.C. § 157. The NLRB has "long held" that this provision of the NLRA "protects

9   employees' ability to join together to pursue workplace grievances, including through litigation."

10  *In re D.R. Horton, Inc.*, 357 NLRB No. 184, at *2 (Jan. 3, 2012). The NLRB has also held that

11  "employees who join together to bring employment-related claims on a classwide or collective

12  basis in court or before an arbitrator are exercising rights protected by Section 7 of the NLRA." *Id.*

13  at *3. Finish Line cites this language from the NLRB to support Finish Line's contention that a

14  state law employment class action, like the one Arreola has brought here, is effectively preempted

15  by Section 7.[2] Opp'n Mot. Remand at 11. Therefore, Finish Line argues it properly removed

16  Arreola's lawsuit so that this Court could decide whether the NLRB has exclusive jurisdiction over

17  an employment law class action. *Id.*

18         Finish Line's argument of removal jurisdiction fails, because it is contrary to clearly

19  established Ninth Circuit law that a state law claim cannot be removed to federal court on the basis

20  that the lawsuit falls within the primary and exclusive jurisdiction of the NLRB. *Ethridge v.*

21  *Harbor House Restaurant* is applicable to Finish Line's argument here. 861 F.2d 1389, 1391 (9th

22  Cir. 1988). In *Ethridge*, the plaintiff filed a lawsuit against his former employer in state court

23  raising various state law claims, including a claim of retaliation for union-organizing efforts. *Id.*

24  _____

25  [2] Finish Line also argues that Arreola's lawsuit implicates Section 9 of the NLRA. Section 9
    provides in relevant part that "[r]epresentatives designated or selected for the purposes of collective

26  bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the
    exclusive representatives of all the employees in such unit for the purposes of collective bargaining

27  in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29
    U.S.C. § 159(a). However, Finish Line cites no authority for the proposition that an employment

28  law class action implicates Section 9. Therefore, Finish Line does not advance any credible
    argument as to how Arreola's lawsuit could conceivably be preempted by Section 9 of the NLRA.

United States District Court
For the Northern District of California

1   The defendant removed the lawsuit to federal court, on the basis that the plaintiff's retaliation claim

2   fell within sections 7 and 8 of the NLRA, and therefore "arose under" the laws of the United States.

3   *Id*. The defendant then moved to dismiss plaintiff's complaint on the grounds that it was preempted

4   by the NLRB. *Id*. The district court granted the motion to dismiss, but the Ninth Circuit reversed.

5   The Ninth Circuit held that removal of the action on the basis of NLRB preemption was improper,

6   because "state law actions claimed to be preempted by sections 7 and 8 of the NLRA are not

7   removable to federal court." *Id*. at 1399-400. This is because an analysis of whether or not state law

8   falls within the primary and exclusive jurisdiction of the NLRB—so-called *Garmon* preemption

9   analysis—is "not an aspect of federal-question jurisdiction" and therefore not an independent basis

10   of original jurisdiction such that it would support removal. *Id*. at 1399. Rather, when "'a claim of

11   *Garmon*-preemption is raised, *it must be considered and resolved by the state court*.'" *Id*. (quoting

12   *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 393 (1986)) (emphasis in original);

13   *id*. at 1400 (preemption arguments regarding sections 7 and 8 of the NLRA are "'questions that

14   must be addressed in the first instance *by the state court* in which respondents filed their claims.'")

15   (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)) (emphasis in original).

16          Finish Line, in arguing that this Court has original jurisdiction to determine whether

17   Arreola's claims are preempted by the NLRB, cited to a single Ninth Circuit case, *Williams v.*

18   *Caterpillar Tractor Co.*, 786 F.2d 928 (9th Cir. 1986). In *Williams*, the Ninth Circuit stated the

19   following in a footnote:

20          The NLRA may constitute a fairly unique area of law where, at least in some cases,
21          the determination of federal jurisdiction in the National Labor Relations Board
        (NLRB) employs the identical analysis required to determine whether a state law
22          claim is preempted. . . . If the activity underlying a state law claim is "arguably
        subject" to regulation under sections 7 and 8 of the NLRA, . . . the action is both
23          preempted and falls within the exclusive jurisdiction of the NLRB. . . . A federal
        court may be able to take jurisdiction over a case removed from state court for the
24          limited purpose of determining whether exclusive federal jurisdiction exists in the
25          NLRB.

26   *Id*. at 934 n. 3. However, the Ninth Circuit has subsequently "rejected footnote three in *Williams*

27   and held that § 7 and § 8 of the NLRA do not completely preempt state law and therefore a

28   defendant asserting preemption under these sections cannot remove a case to federal court."

13

1    *Holcomb v. Bingham Toyota*, 871 F.2d 109, 111 (9th Cir. 1989). Accordingly, Finish Line's

2    authority for the proposition that this Court could take jurisdiction over Arreola's claims to

3    determine NLRB preemption is no longer good law. In sum, Finish Line has not demonstrated that

4    the issue of NLRB preemption creates an independent ground of federal jurisdiction to support

5    removal of Arreola's claim.

6         **B.       Motion to Transfer**

7         Because the Court determines it has jurisdiction pursuant to CAFA, the Court now analyzes

8    Finish Line's motion to transfer venue to the Central District of California. When determining

9    whether to transfer an action to another district, a court must employ a two-step analysis. First, the

10   court considers the threshold question of whether the case could have been brought in the forum to

11   which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44

12   (1960); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining

13   whether an action might have been brought in a district, the court looks to whether the action

14   initially could have been commenced in that district.") (internal quotation marks and citations

15   omitted). Once the party seeking transfer has made this showing, the court has discretion to

16   consider motions to change venue based on an "individualized, case-by-case consideration of

17   convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Here, the

18   parties do not dispute that Arreola could have brought this action in the Central District. Mot.

19   Transfer at 3; Opp'n Mot. Transfer at 2-4. The Court therefore proceeds to the convenience and

20   fairness inquiry.

21        Pursuant to Section 1404(a), a court weighing a motion to transfer should consider: (1) the

22   convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. 28

23   U.S.C. § 1404(a). In the Ninth Circuit a court may weigh additional factors, including: (1) the

24   location where the relevant agreements were negotiated and executed; (2) the state that is most

25   familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties'

26   contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen

27   forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of

28   compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of

14

access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne,* No. 08–1339, 2008 WL 4543043 CW, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.*, 487 U.S. at 29). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

### 1.    Plaintiff's Choice of Forum

In general, a plaintiff's choice of forum is accorded substantial weight. *See Decker Coal Co.*, 805 F.2d at 843. However, a plaintiff's choice of forum is given less weight when the plaintiff is not a resident of the forum in which plaintiff brings the lawsuit. *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998). In addition, where, as here, "an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Ambriz v. Coca Cola Co.*, No. 13-CV-03539, 2014 WL 296159 JST, at *6 (N.D. Cal. Jan. 27, 2014) ("[W]here the plaintiff has brought an action on behalf of a class and the operative facts have not occurred within the forum, the plaintiff's choice of forum is entitled to less weight.") *In re Yahoo! Inc.*, No. CV07-3125, 2008 WL 707405 CAS, at *6 (C.D. Cal. Mar. 10, 2008) (in matter where "plaintiffs do not reside in this forum and [assert] a class action, the usual reasons for deferring to a plaintiff's choice of forum do not apply."); *Baird v. Cal. Faculty Ass'n*, No. C-00-0628-VRW, 2000 WL 516378, at *2 (N.D. Cal. Apr. 24, 2000) (finding that "mechanistic adherence" to the rule that a plaintiff's choice of forum is accorded deference "is inappropriate in a class action in which plaintiffs are dispersed throughout the state.") (citing *IBJ Schroder Bank & Trust Co. v Mellon Bank*, 730 F Supp. 1278, 1282 (S.D.N.Y. 1990)).

Here, Arreola lived in the Central District while he worked for Finish Line. *See* ECF No. 20-1, ¶ 2; *see also* ECF No. 20-2, ¶¶ 7-8. Indeed, by all accounts Arreola currently lives in the Central District. ECF No. 20-1, ¶ 2; *see also* ECF No. 20-2, ¶¶ 7-8. Moreover, at all times while Arreola was an employee of Finish Line, Arreola worked at a Finish Line store in Montebello, California, which is within the Central District. ECF No. 20-1, ¶ 2. Therefore, Arreola's claim

15

1   involves a resident of the Central District, and stems from conduct that occurred within the Central

2   District. Furthermore, Arreola has brought a class action seeking to represent a class of current and

3   former Finish Line employees, and a sub-class of "Sales Leads" employed by Finish Line

4   throughout California. *See* First Am. Compl. ¶ 28. In light of the fact that Arreola is not a resident

5   of the Northern District, that Arreola's claim stems from conduct that did not occur in this District,

6   and in light of the fact that Arreola seeks to bring a class action on behalf of individuals dispersed

7   throughout the state, this Court accords Arreola's choice of forum minimal deference.

### 2.       Convenience of the Parties

9       "The convenience of the parties is . . . an important factor in determining whether to allow a

10  transfer of venue." *Jarvis v. Marietta Corp.*, No. C 98-4951, 1999 WL 638231 MJJ, at *4 (N.D.

11  Cal. Aug. 12, 1999). In weighing this factor, "courts do not consider the convenience to parties that

12  have chosen to bring a case in a forum where they do not reside, nor do courts consider the

13  convenience to potential class members whose participation in the case is merely speculative."

14  *Brown v. Abercrombie & Fitch Co.*, No. 13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal.

15  Feb. 14, 2014) (citing *Flint v. UGS Corp.*, No. C07-04640 MJJ, 2007 WL 4365481, at *3 (N.D.

16  Cal. Dec. 12, 2007)). Here, Finish Line argues that it would be more convenient to litigate this case

17  in the Central District, as Arreola was at all relevant times employed there. *See* ECF No. 20-1, ¶ 2.

18  Arreola counters that Finish Line, as an out-of-state corporation, would be equally inconvenienced

19  by having to litigate in the Northern District as the Central District. Reply Mot. Transfer at 5. The

20  Court finds that neither party has advanced a particularly persuasive argument with respect to the

21  convenience of the parties. Therefore, it is neutral.

### 3.       Location Where Relevant Agreements Negotiated and Executed

23      In the Ninth Circuit, the location where the relevant agreements were negotiated and

24  executed is a factor a court may consider in deciding a motion to transfer. *Jones*, 211 F.3d at 498.

25  Here, because Finish Line employed Arreola exclusively within the Central District, *see* ECF No.

26  20-1, ¶ 2, Arreola's employment agreement was most likely negotiated and executed in the Central

27  District. Therefore, this factor weighs in favor of transfer.

### 4.       The Respective Parties' Contacts With the Forum

16

Both parties' contacts with the forum is also relevant to the transfer inquiry. *Jones*, 211 F.3d at 498. Here, Arreola has had no contact with the Northern District of California, other than the filing of the instant lawsuit. *See* ECF No. 20-1, ¶ 2 (stating that Arreola lived in Montebello, California and worked in Los Angeles). Indeed, Arreola does not claim to have lived in this forum, worked in this forum, or otherwise interacted with this forum in a way related to his lawsuit. However, Arreola does allege that Finish Line has "many stores" in the Northern District. Opp'n Mot. Transfer at 4. Accordingly, Arreola claims that "potential class members [are] located throughout the state of California, including the Northern District." *Id*. at 5. Finish Line does not rebut either of these statements. *See* Reply Mot. Transfer at 2-5. Accordingly, because Finish Line and at least some putative class members appear to have contacts with the Northern District, the Court finds this factor weighs against transfer to the Central District.

### 5.      The Differences in the Costs of Litigation in the Two Forums

Finally, while convenience to the parties' attorneys is "not an appropriate factor for the Court to consider when deciding a motion to transfer," *see Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *5 (N.D. Cal. Sept. 14, 2011) (internal quotation marks omitted), the "differences in the costs of litigation in the two forums" is relevant, *Jones*, 211 F.3d at 498-99. Here, counsel for both Arreola and Finish Line are located in the Central District. *See* Mot. Transfer at 6; Opp'n Mot. Transfer at 4. Arreola, the named plaintiff, is also located in the Central District. *See* ECF No. 20-1, ¶ 2. Finally, many of the witnesses who could speak to the policies, practices, and procedures at Finish Line's Montebello store during Arreola's employment, as well as the specifics of Arreola's employment, are also presumably located in the Central District. *See* Mot. Transfer at 5. Therefore, the cost of litigation would likely be lower in the Central District than in the Northern District, as counsel and at least some of the key witnesses would not need to travel to the Northern District for court proceedings. Thus this factor weighs in favor of transfer.

### 6.      Convenience to the Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *State St. Capital Corp. v. Dente,* 855 F. Supp. 192, 197 (S.D.

17

United States District Court
For the Northern District of California

Tex. 1994)). In addition, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of *non-party witnesses* is the more important factor." *Id.* (emphasis added). The moving party bears the burden of identifying the relevant witnesses and why it would be more convenient for them to testify in another venue. *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002).

Here, Finish Line argues that "any witnesses that may testify, including co-workers and local managers in the Central District that supervised Arreola, and/or third party witnesses (such as former employees) who would have observed the work of Arreola are predominantly located in the Central District," and that the testimony of such witnesses will be "necessary" to the case. Mot. Transfer at 5; *see also* Reply Mot. Transfer at 4. Arreola has disputed whether non-party witness testimony will be important. Opp'n Mot. Transfer at 7. However, according to the record, Arreola was employed exclusively by Finish Line in Montebello, California, which is in the Central District. ECF No. 20-1, ¶ 2. Accordingly, any violations of California labor laws which Arreola personally experienced would have occurred exclusively within the Central District. Therefore, should either party call non-party witnesses—such as Arreola's former co-workers or managers who could testify as to the policies, conditions, or practices at Arreola's place of employment— these witnesses will most likely reside within the Central District. Mot. Transfer at 5. Therefore, it would be far more convenient for non-party witnesses with relevant testimony to testify in that district. Indeed, other district courts in this Circuit have held that where, as here, a plaintiff brings a statewide putative class action based on employment law violations alleged to have occurred in another district, non-party witnesses are more likely to reside in the district where the alleged misconduct transpired and that this factor tips in favor of transferring venue. *See Abercrombie & Fitch Co.*, 2014 WL 715082, at *5 (finding that, in an employment class action involving disputes over rest periods, payment practices, and employment policies, witnesses would likely include plaintiffs' former managers and supervisors, almost all of which were in the Central District); *Wilson*, 2011 WL 4345079, at *4 (finding that, in an employment class action where the plaintiffs resided in the Central District, "the principal witnesses in this case will be Plaintiffs and their local managers and co-workers who mostly reside in the Central District."); *Ruiz v. Affinity Logistics*

18

United States District Court
For the Northern District of California

*Corp.*, No. C 05-02015 JSW, 2005 WL 5490240, at *3 (N.D. Cal. Nov. 7, 2005) (finding that, where plaintiff was employed exclusively in the Southern District of California, relevant third-party witnesses were most likely to be located there). Moreover, to the extent any non-party witnesses in the Central District would need to be compelled to testify at a hearing or trial, such witnesses would be beyond this Court's subpoena power. *See* Fed. R. Civ. Proc. 45(c)(1) (subpoena may command an individual to appear at deposition, hearing or trial only within 100 miles of where "the person resides, is employed, or regularly transacts business in person."). The availability of compulsory process to compel attendance of unwilling non-party witnesses is a relevant factor in weighing a motion to transfer. *Jones*, 211 F.3d at 498-99.

The Court finds that Finish Line has carried its burden to show that it would be more convenient for non-party witnesses to testify in the Central District. Therefore, this factor weighs in favor of transfer.

### 7.   Interest of Justice

Finally, the Court finds that the applicable interest of justice factors favor transfer. In evaluating the interest of justice, a court may consider public interest factors such as court congestion, the local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty. *Decker Coal Co.*, 805 F.2d at 843 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

With respect to the local interest in deciding local controversies, Finish Line argues that because certification of Arreola's alleged class action is not guaranteed, the only instant interest is Arreola's individual claims. *See* Reply Mot. Transfer at 5. Because Arreola was employed exclusively in the Central District, that district has the greatest local interest in deciding this controversy. *Id*. Arreola contends that if his class is certified, then the Northern District would have as equal an interest in adjudicating the class's claims as any other district in California. Opp'n Mot. Transfer at 9. The Court finds that while the Northern and Central Districts would have an equal interest in a certified class's case, the Central District has a greater interest in Arreola's individual claim. *See Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009) (finding that, while the transferee district's interest was not substantially stronger than the transferor's, it

19

1     "nevertheless remains stronger because the events at issue took place there"). Thus on balance, the

2     Court finds that this factor tips in favor of transfer.

3            Finally, "[t]o measure congestion, courts compare the two fora's 'median time from filing

4     to disposition or trial.'" *Ctr. For Food Safety v. Vilsack*, No. C 11-00831, 2011 WL 996343 JSW,

5     at *8 (N.D. Cal. Mar. 17, 2011) (quoting *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472

6     F. Supp. 2d 1183-96 (S.D. Cal. 2007)). According to statistics maintained on the United States

7     Courts website, the median time from filing to disposition and filing to trial in the Northern District

8     of California is 8.2 months and 31 months, respectively. *See* United States Courts Statistics,

9     http://www.uscourts.gov/Statistics.aspx (last visited Dec. 1, 2014). The median time from filing to

10    disposition and filing to trial in the Central District is 5.6 months and 21.3 months. *Id.* This means

11    that the median time from filing to disposition in the Northern District is 2.6 months longer than in

12    the Central District, and the median time from filing to trial is 9.7 months longer. This difference is

13    not insignificant. Therefore, this factors also tips slightly in favor of transfer.

**8.        Summary of Motion to Transfer Factors**

15           The Court accords Arreola's choice of forum minimal consideration, because Arreola is not

16    a resident of the Northern District, and Arreola has asserted a class action. In addition, the fact that

17    the relevant agreements were most likely negotiated and executed in the Central District, and the

18    fact that the cost of litigation is likely to be lower in the Central District weigh in favor of transfer.

19    Furthermore, the fact that litigation in the Central District would be more convenient to non-party

20    witnesses, and that relevant non-party witnesses in the Central District would be beyond the

21    subpoena power of this Court also weigh in favor of transfer. Finally, the interest of justice factors,

22    including the fact that the Central District has a greater interest in Arreola's individual claims, and

23    the fact that the Central District is less congested, weigh in favor of transfer. The only factor that

24    weighs against transfer is the respective parties' contacts with the Northern District, as it appears

25    that both Finish Line and at least some putative class members have contacts with this district. The

26    remaining relevant factor, the convenience of the parties, is neutral.

27           On balance, the factors weigh in favor of transfer. Therefore, the Court GRANTS Finish

28    Line's motion to transfer.

20

Case No.: 14-CV-03339-LHK
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO TRANSFER

IV.     **CONCLUSION**

For the foregoing reasons, Arreola's Motion to Remand is DENIED. Finish Line's motion to transfer is hereby GRANTED. The case is hereby TRANSFERRED to the Central District of California.

**IT IS SO ORDERED.**

Dated: December 9, 2014



LUCY H. KOH
United States District Judge

Case No.: 14-CV-03339-LHK
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO TRANSFER